### Richmond

CITY OF MANASSAS, ET AL.

v.

DORIS B. ROSSON, ET AL.

September 9, 1982.

Record No. 800642.

Present: All the Justices.

14

*Robert W. Bendall (Turner T. Smith; Smith and Davenport,* on briefs), for appellants.
*William J. LoPorto* for appellees.

CARRICO, C.J., delivered the opinion of the Court.

The zoning ordinance of the City of Manassas permits a limited home occupation in a residential district; however, § 1-34(a) of the ordinance restricts the right to "the immediate family residing in the dwelling." The validity of § 1-34(a) was challenged by Doris B. Rosson who, on December 7, 1978, was summoned to appear in general district court to answer a charge that she operated a business in a residential district in violation of the Manassas ordinance. Upon her conviction in general district court, she appealed to circuit court.

While the appeal was pending, the zoning administrator of the City of Manassas filed in circuit court a petition for injunction seeking to restrain Mrs. Rosson from continuing to conduct a business in a residential district. The court considered the appeal and the petition together and, after a hearing, declared § 1-34(a) of the Manassas ordinance unconstitutional. By order entered February 1, 1980, the court dismissed the criminal charge against Mrs. Rosson and denied the City's petition for injunction.[1] This appeal concerns only the denial of the injunction petition and presents the question whether § 1-34(a) is invalid in prohibiting "outside" employees in home occupations.

The record shows that Mrs. Rosson, a widow without immediate family, conducts a telephone answering service in her home on Sudley Road in Manassas. She employs two part-time workers to assist her; neither is related to her, and both reside elsewhere.

Mrs. Rosson's property is located in a single-family residential district that extends along both sides of Sudley Road, a four-lane, heavily traveled thoroughfare in Manassas. Within a short distance of Mrs. Rosson's home, a chiropractor, an orthopedic surgeon, and a general surgeon conduct their practices in dwellings located on Sudley Road. Across the road from Mrs. Rosson's home, Wright Realty, Inc., operates a real estate business in a former dwelling. Two of the medical offices purport to qualify as valid limited home occupations. The other medical office and the real estate business claim valid status as non-conforming uses. Only the real estate business was shown to have "outside" employees.

On appeal, the City contends the trial court erred in holding § 1-34(a) invalid. Mrs. Rosson contends the court was correct because this section of the ordinance (1) "is not substantially or reasonably related to the accomplishment of the health, safety and general welfare of the people," (2) "is not reasonably suited to protecting and promoting harmonious residential areas," and (3) "does not comply with constitutional requirements of equal pro-

---

[1] The February 1, 1980 order adjudicated the principles of the cause and stated it was "final." On February 21, 1980, another order was entered. According to Mrs. Rosson, the second order "took away the aspect of finality of the Judgment of February 1, 1980, and therefore raises the question as to whether this Appeal is from a final judgment." As we interpret the second order, however, it merely suspended the execution of the first order in accordance with the provisions of Code § 8.01-676.

tection, neither in its enactment nor in its application to the facts of this case, and in particular, to Rosson."

■ The applicable principles are well settled. In *Board of Supervisors* v. *Carper,* 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959), we said:

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on [the person] who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained.

And, in *Fairfax County* v. *Snell Corp.,* 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974), we stated:

> Inherent in the presumption of legislative validity stated in *Carper* is a presumption of reasonableness. But, as *Carper* makes plain, the presumption of reasonableness is not absolute. Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance "must be sustained." If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained.

■ A fairly debatable question is presented "when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Fairfax County* v. *Williams,* 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975). The evidence required to raise a question to the fairly debatable level must be "not only substantial but relevant and material as well." *Id.* And, while a trial court's finding of unreasonableness in zoning action carries a presumption of correctness, we still accord the action its presumption of legislative validity in our

review. *Loudoun Co.* v. *Lerner,* 221 Va. 30, 34-35, 267 S.E.2d 100, 103 (1980).

A zoning ordinance must not arbitrarily discriminate, either in terms or application. "When a land use permitted to one landowner is restricted to another similarly situated, the restriction is discriminatory, and, if not substantially related to the public health, safety, or welfare, constitutes a denial of equal protection of the laws." *Bd. Sup. James City County* v. *Rowe,* 216 Va. 128, 140, 216 S.E.2d 199, 210 (1975). But, in reviewing zoning ordinances, the courts "deal with economic and social legislation where legislatures have historically drawn lines which [the courts] respect against the charge of violation of the Equal Protection Clause if the law be " 'reasonable not arbitrary' " . . . and bears 'a rational relationship to a [permissible] state objective.' " *Village of Belle Terre* v. *Boraas,* 416 U.S. 1, 8 (1974).

Two Code sections are pertinent. Section 15.1-427, part of Title 15.1, Chapter 11, entitled "Planning, Subdivision of Land and Zoning," states that the "chapter is intended to encourage local governments to improve [the] public health, safety, convenience and welfare of [their] citizens and to plan for the future development of communities to the end . . . that residential areas be provided with healthy surrounding[s] for family life. . . ." Section 15.1-489, also part of Chapter 11, provides that "[z]oning ordinances shall be for the general purpose of promoting the health, safety or general welfare of the public and of further accomplishing the objectives of § 15.1-427" and that, "[t]o these ends, such ordinances shall be designed . . . (3) to facilitate the creation of a convenient, attractive and harmonious community. . . ."

In our opinion, § 1-34(a) is substantially related to promotion of the public health, safety, and welfare, is reasonably suited to protection of harmonious residential areas, and does not in its terms arbitrarily discriminate. According these aspects of the problem due deference, we believe that the enactment of the section reflects a proper exercise of the discretion vested in the legislative branch of local government, directed to the accomplishment of a legitimate state objective.

In the field of zoning, the line which " 'separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions.' " *Belle Terre,* 416 U.S. at 4, quoting from *Euclid* v. *Am-*

*bler Co.,* 272 U.S. 365, 387 (1926). Where the question is whether to permit home occupations in residential areas and, if so, to what extent, the legislative body necessarily engages in a balancing of interests that may vary from area to area as circumstances and conditions differ.

On one side is the pressure to continue the time-honored practice of permitting such persons as doctors, lawyers, music teachers, and dressmakers to practice their professions and pursue their occupations in their respective residences. On the other is the desire to preserve the residential character of areas designated for residential use. Both sides involve important considerations substantially affecting the public health, safety, and welfare.

■ In making its decision in this type of case, a legislative body properly may consider the necessity of keeping residential areas free of disturbing noises, increased traffic, the hazard of moving and parked vehicles, and interference with quiet and open spaces for child-play. *Belle Terre,* 416 U.S. at 5. Also pertinent are the possible consequences of permitting "outside" employees in home occupations:

> [W]hen the requirement for residence is dropped, what was a home becomes a professional building (where perhaps more than one doctor, lawyer, etc., may engage in the pursuit of his profession); or an erstwhile home is transformed into a place where the business of dressmaking or millinery or music instruction is conducted. Thus, a clearly discordant element is injected into a high-class residential district and erosion of the overall zoning scheme begins.

*Keller* v. *Westfield,* 39 N.J. Super. 430, 436, 121 A.2d 419, 422 (1956).

■ In avoidance of these consequences, Manassas sought to limit the quantum and scope of business activity in residential districts. Striking a balance between the competing interests, the City chose to permit home occupations in residential districts, restricting the right, however, to "the immediate family residing in the dwelling." We think this action presents a classic example of legislative discretion at work in aid of the public health, safety, and welfare.

■ We have held, however, that "no matter how legitimate the legislative goal may be, the police power may not be used to

regulate property interests unless the means employed are reasonably suited to the achievement of that goal." *Alford* v. *Newport News,* 220 Va. 584, 586, 260 S.E.2d 241, 243 (1979). Here, Mrs. Rosson contends that, even conceding the desirability of promoting and protecting harmonious residential areas, a "no outsider" restriction in home occupations is unreasonable.

Mrs. Rosson argues that Manassas could have preserved the family character of residential districts and yet permitted "outside" employees in home occupations by limiting to two the number of such employees. We agree that this might have been a reasonable alternative, but it does not follow that it is the only reasonable plan or that the plan adopted by Manassas is unreasonable. *Fairfax County* v. *Jackson,* 221 Va. 328, 335, 269 S.E.2d 381, 386 (1980).

A similar argument was made in *Belle Terre.* There, an ordinance restricted land use, with certain exceptions, to one-family dwellings. The word "family" as used in the ordinance was defined to include "[o]ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit [and a] number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage. . . ." 416 U.S. at 2.

It was argued in *Belle Terre* that "if two unmarried people can constitute a 'family,' there is no reason why three or four may not." The court answered: "But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial function." 416 U.S. at 8 (footnote omitted).

■ Mrs. Rosson argues further that we should hold the "no outsider" restriction not reasonably suited to promoting harmonious residential areas because "[t]he evidence produced through the City Council itself, including its Mayor, showed, by default, the unreasonableness of the [restriction]. City did not come forward with any evidence to show [the restriction was] in fact reasonable. Therefore the evidence of unreasonableness defeated the presumption of reasonableness and the [restriction] should not be sustained."

We disagree with Mrs. Rosson. She does not tell us where in the record we can find evidence produced by the City which shows, "by default," that the "no outsider" restriction is not reasonably suited to promotion of harmonious residential areas. We

do find, however, a statement by the city manager, one of the City's witnesses, that is directly on point:

> [T]here is nothing to my mind that could be any more damaging to a piece of residential property than to have a business spring up next door if it is not properly handled and in order to make sure that the business is not one that can get out-of-hand and be objectionable to the neighborhood, the best way in my opinion is to make sure that it is strictly operated by the people that live in the home.

We will assume for purposes of this discussion that Mrs. Rosson presented probative evidence of the unreasonableness of the "no outsider" restriction. Still, the statement of the city manager, and other evidence submitted by the City, was sufficient to make the question of the restriction's reasonableness at least fairly debatable. Hence, the presumption of reasonableness was not defeated.

This brings us to the equal protection question. As noted earlier, a zoning restriction is inviolate against an equal protection claim if it is reasonable and bears a rational relationship to a permissible state objective. *Belle Terre,* 416 U.S. at 8. We have in the discussion just concluded upheld the reasonableness of the "no outsider" restriction. We now hold the restriction is rationally related to a permissible state objective.

Code §§ 15.1-427 and -489 establish the legislative goal of providing residential areas "with healthy surrounding[s] for family life" and facilitating "the creation of a convenient, attractive and harmonious community." The achievement of this goal is a permissible state objective. *Belle Terre,* 416 U.S. at 9. The "no outsider" restriction of the Manassas ordinance contributes directly and substantially to that objective. Hence, § 1-34(a) does not in its terms arbitrarily discriminate among those subject to its restriction.

Mrs. Rosson maintains, however, that, in application, § 1-34(a) "discriminates against widows, the unmarried, and those . . . not fortunate enough to have families."[2] She says that, as a

---

[2] A similar argument was made in *Belle Terre:* "It is said that the Belle Terre ordinance reeks with an animosity to unmarried couples who live together." The Court replied: "[T]here is no evidence to support [the argument]; and the provision of the ordinance bringing within the definition of a 'family' two unmarried people belies the charge." 416 U.S. at 8.

widow with no immediate family, "she has been singled out for different, if not special, treatment."

The burden was upon Mrs. Rosson to prove she was the object of discrimination by showing she was treated differently from others similarly situated. She failed in this burden. She neither showed that another in her status, a single or widowed non-family property owner, had been permitted to use "outside" employees in a home occupation nor that her situation was similar to the one property owner in the neighborhood actually using "outside" employees. Wright Realty, Inc., is that one property owner.

Wright Realty claims valid status for its real estate business as a non-conforming use; the City recognizes this status. The record shows that, prior to the adoption of the City's zoning ordinance, Dr. William Jamison lived in, and conducted his practice from, the dwelling located on the property; he was assisted by his wife, who was a nurse, and one part-time employee. Following adoption of the ordinance, Dr. Jamison died. For approximately eighteen months following his death, his widow kept the office open to administer medication and to collect the doctor's accounts. Wright Realty then purchased the property and has since conducted a real estate business in the former dwelling. The firm employs eleven to thirteen persons.

Mrs. Rosson asks: "[H]ow can City justify the change over from a medical office maintained in a dwelling in which [Dr. Jamison] lived . . . to a real estate office with no restriction as to number, relationship or residency of employees and treat this change as an extension of the non-conforming use which consisted of a doctor with two employees?"

In this question, Mrs. Rosson implies that the City's recognition of Wright Realty's non-conforming use is wrongful, resulting in discrimination against her, and she suggests that the wrong can be corrected only by permitting her to use "outside" employees in her business. Even if we assume Wright Realty's use is wrongful, we must reject this suggestion; the law does not follow the thesis that two wrongs make a right.

---

The Manassas zoning ordinance contains a similar inclusive definition of "family": "A number of persons not exceeding three, living and cooking together as a single housekeeping unit though not related by blood, adoption or marriage." Section 1-25(b). Inexplicably, although § 1-25 is printed in the appendix, neither party has alluded to the section in argument.

For the reasons assigned, the order denying the City's petition for injunction will be reversed, and the case will be remanded for the entry of an appropriate restraining order in accordance with the prayer of the petition.

*Reversed and remanded.*