## CIRCUIT COURT OF THE CITY OF PETERSBURG

Walter F. Dance, III, et al.

v.

City of Petersburg

February 11, 1985

By JUDGE OLIVER A. POLLARD, JR.

This Declaratory Judgment proceeding was instituted by several owners of apartment buildings containing more than three units and served by one master water meter. They challenge the validity of Section 38-81.1 of the Code of the City of Petersburg, which prescribes minimum water rates for multi-family dwelling units and seek reimbursement of any excessive payments in the event the Court rules in their favor on the validity issue.

The ordinance involved was adopted on May 20, 1980, as Section 47-45.1 of the Code of the City of Petersburg and later recodified as Section 38-81.1, and read as follows:

> Section 47-45.1 *Water Rates for Multi-Family Dwelling Units.* Where more than three (3) dwelling units are served through one master water meter, the water rate determined by the master meter shall be the larger of the following:
>
> 1. The minimum charge for each dwelling unit based upon the meter size that would be required to serve that unit, multiplied by the total number of units; or
>
> 2. A rate charged for each dwelling unit based upon the average individual unit consumption, multiplied by the total number of dwelling units.

This ordinance shall become effective July 1, 1980, and the above rates shall be effective for water consumed on that date and thereafter.

It has been stipulated that the ordinance did not apply to hotels, motels, or other industrial or commercial users; that the City handles installation of water lines from its main up to and including the meter; that there is no substantial difference in the time of use or the use of the water between apartments with more than three units or those with three or less, and; that the Complainants had all chosen to have one master meter for their apartments in order to take advantage of discount rates for large users.

Plaintiffs contend that Section 38-81 is invalid for the following reasons:

1. Its restricted application to only owners of more than three dwelling units is arbitrary, capricious, unfair, discriminatory, and without a reasonable basis.

2. Its passage was violative of due process owed to the landlords and was an impairment of landlords' contract rights guaranteed to them.

3. It is unconstitutionally vague in its failure to define "dwelling unit" as used in the ordinance.

4. It violates Section 15.1-873 and -875 of the 1950 Code of Virginia, as amended, which section empowers the City to change from and regulate water supply systems.

The Court made preliminary rulings in favor of the Defendant on the 2nd, 3rd and 4th issues, on August 31st of 1983 and will touch but briefly on these issues. These matters were thoroughly briefed and reference is made to Memoranda filed herein for more detailed information and discussion.

Sections 15.1-873 and -875 of the 1950 Code of Virginia, read together, provide the authority for the City to exercise certain powers and operate necessary facilities in order to secure, preserve, and promote health, safety, welfare, comfort, convenience, trade, commerce,

and industry, and specifically, to operate a water system and to charge and collect compensation for water supplied. The Court finds that Plaintiff's contention that Petersburg's ordinance restricts commerce, thereby violating the Virginia Code, to be without merit and not supported by the facts or authorities submitted for consideration.

Plaintiffs point out that Section 38-81.1, unlike several other ordinances of the City of Petersburg, does not provide a definition of "dwelling unit," and several sets of circumstances are suggested where such a definition would be needed in order to determine applicable charges. Plaintiffs conclude that the ordinance, lacking such a definition, is fatally vague and uncertain. Defendants make the point that there has been no showing by the Plaintiff that any vagueness or uncertainty has been experienced in determining the ordinance's applicability to them since its adoption. Authorities relied upon by Defendants suggest that in order for an ordinance to be considered impermissibly vague, there must be no reasonable interpretation advanced consistent with the purpose of the ordinance. Counsel for Plaintiffs have not argued that the words in question are not susceptible to some reasonable interpretation but only that they are vague and uncertain. The Court concludes that such is not the case and the phrase "dwelling unit" as used in the Petersburg ordinance is not impermissibly vague and does not violate due process.

The Court likewise is of the opinion that the passage of the ordinance was not violative of due process nor an impairment of the landlord's contract rights as alleged by the Plaintiffs. Subsequent to the filing of the Bill of Complaint, the Plaintiffs have advanced nothing of substance to support the allegation contained in paragraph eight of the Bill that "the passage and enforcement of said ordinance violates due process." The Court, therefore, assumes Plaintiffs have abandoned this allegation and it will not be further considered. As to the claim that the ordinance impairs their contractual rights, the Plaintiffs apparently maintain that the City, having once allowed the installation of master meters in multi-family dwelling units, is contractually bound, and cannot thereafter alter the situation by enacting a multiple minimum billing ordinance. Plaintiffs cite only the Virginia Constitution's admonition that no laws should be passed impairing the obligations of contracts. Defendants respond

"that water rates obviously may be altered if necessary to promote the general welfare" and that "whatever contract rights the Plaintiffs have must yield to the City's right to vary its water rates subject only to the requirement of reasonableness." The Plaintiffs' allegation on this issue simply is not convincing and must fail.

We now come to Plaintiffs' contention that the ordinances' "restricted application to only those owners of more than three dwelling units is arbitrary, capricious, unfair, discriminatory and without reasonable basis." We have also to consider the suggestion that the ordinance is defective because it does not take vacancies into consideration.

Additional briefs were requested by and provided the Court on these issues. Following this there was a period of time when it was understood that the parties were negotiating. Counsel for Plaintiffs subsequently advised the Court that their efforts had not met with success and requested the Court to proceed with the matter.

Although there is no reference to "vacancies" in the City's ordinance, Mr. Blount, Director of Finance for the City of Petersburg, stated that the administration interpreted the language, "units served" to mean that vacancies should be considered, and a policy was established, which provided for credits to apartment owners where there were vacancies. Notice was sent to such owners in October of 1980 outlining procedures to be followed for claiming such credits. Most of the apartment owners who testified admitted eventually acquiring knowledge of the City's policies in some fashion. Plaintiffs argue that the ordinance did not address the vacancy situation and even if the City's policy relating to vacancies brings the application of the ordinance into line, it cannot cure the defect in the ordinance itself.

There is of course a presumption in favor of the propriety and validity of municipal ordinances and the burden is upon one alleging the invalidity of such an ordinance to establish such by clear and convincing proof. *National Linen Service Corporation* v. *City of Norfolk*, 196 Va. 277 (1954), and *Bristol Redevelopment and Housing Authority* v. *Denton*, 198 Va. 171 (1956). In addition Courts, in determining the meaning of ambiguous or doubtful statutory provisions, should consider interpretations made by the public officials entrusted with the administration of the statute. *Nuttall* v. *Lankford*, 186

Va. 532 (1947), 12 Michie's Jurisprudence, *Statutes*, Sections 58-59. The Court does not consider the interpretation by the officials of the City of Petersburg, that vacancies are to be considered under the language of the ordinance, to be unreasonable, and so interpreted the ordinance is not invalid.

Plaintiffs argue that no other water users such as "hotels, motels, shopping centers, office buildings or commercial users," were subjected to an ordinance such as the one under consideration and the City is, therefore, unreasonably discriminating against owners of multiple family dwelling units. The City's expert, Dr. Patrick C. Mann, testified there were basically three broad categories of water users: industrial, commercial and residential. He outlined substantial reasons for different treatment of users in these categories. For instance, there are demand peaks peculiar to residential users that must be considered in planning and maintaining a water system and that time of use is the single most important characteristic considered in setting rates. Dr. Mann stated that apartment complex use and demand characteristics were very similar to residential or single family residential dwellings and should be considered in the same category. There was nothing offered by Plaintiffs to refute Dr. Mann's testimony.

There seems to be no dispute that municipal water rates must be fair, reasonable, just, uniform and non-discriminatory; however, cities do have the right to group water consumers into classes and charge different rates among the classes as long as the classification is based on some reasonable ground of distinction and is not arbitrary or unreasonable. There is agreement that such things as cost of service, purpose of service, quantity of consumption, character of service and type of use may be considered in establishing meter rates for multiple minimum billing for multiple family dwelling units. An apartment complex is a group of dwellings, and it is reasonable that the rate charged per family in such a complex should be the same as that charged to families occupying single family dwellings. The Court is of the opinion that the treatment afforded multiple family dwelling units by the Petersburg ordinance while different from that for other types of users is not unreasonable discrimination.

Finally, is the application of the multiple minimum billing only to those master meters serving more than three family dwelling units, unreasonable, arbitrary, or discriminatory? The Supreme Court of Virginia has made it clear that local governments have wide discretion in the exercise of their police power in the enactment of ordinances and such ordinances will be sustained if they reasonably relate to the protection of the health, safety and welfare of the community. *City of Manassas v. Rosson*, 224 Va. 12 (1982). "Legislative action is reasonable if the matter in issue is fairly debatable" or such that when "measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Board of Supervisors of Fairfax County v. Pyles*, 224 Va. 629, 300 S.E.2d 79 (1983).

Mr. Blount testified there were approximately 680 multiple family dwellings in the City of Petersburg, 560 with two or three units and 120 with four or more units. He stated "the purpose of the ordinance) was to bring multi-family units into the billing structure of a single resident family" with the result that "each apartment unit would be billed in line with single family units." When asked why two and three dwelling units were not included he said, "that units of three or less would not benefit greatly or the City would not benefit in revenues because the sliding scale would not affect the three as greatly as it would more than three and that the cost in administering the three or less units on a monthly basis--it far exceeds the revenue we thought it would generate." Again, on cross-examination, when questioned about the significance of the number "three," Mr. Blount testified "that was the unit number from the computation derived by the costs involved, the number of units that we anticipated that would have less than four; and cost involvement in administering them compared to revenues that we felt would be generated by applying multiple family." When pressed he conceded that once units were identified they could be put on a computer and thereafter billing would be done by the computer and that, but for vacancies, there would be no worry about administrative costs. Mr. Blount maintained, however, that the costs of handling vacancy entries and credits would be substantial for two and three dwelling units when compared with the return to the City. In further

explanation of why the return to the City, if the ordinance included two and three family dwelling units, would not justify the added administrative costs, he said "their consumption was not high enough that they were being benefited from the sliding scale." In support of the City's approach its expert, Dr. Patrick C. Mann, when questioned by Plaintiffs' counsel about not including two and three dwelling units in the ordinance stated: "If I was in charge of making that decision the criteria that I would have used is a simple costs analysis to determine whether to include the two and three units."

Counsel advise they have found no reported cases involving an ordinance similar to the one under consideration where applicability begins with a certain number of family units per master meter. The question is whether the City of Petersburg had a reasonable basis for its apparently unique approach. On the subject of "reasonable classification" McQuillan, *Municipal Corporations*, states "the law must apply equally to each member of the class, and all classification must be based upon substantial distinctions which make one class different from another. In other words, the ordinance must be general in its character and operate equally upon all persons within the municipality of the class to which it relates." In that portion of his work entitled "Rates Based on Consumer Classification" McQuillan suggests "variances in rates must have a rational basis and not be purely arbitrary, and must be fair and equal to similarly situated properties, that is, there must be uniformity within the class." It is difficult, to say the least, to justify the ordinance passed by the City of Petersburg when considered in light of the law according to McQuillan as it would seem there is discrimination within a class of users. The concern stated another way is that the authority of a city to fix and enforce rates for its services and to classify its customers is not a license to discriminate among customers of essentially the same character and service. *Orange Water and Sewer Authority* v. *Estate of Nancy Armstrong*, 34 N.C.App. 162, 237 S.E.2d 486.

The City argues that its ordinance must be upheld if there is any rational justification for treating owners of two and three multiple family dwelling units differently from owners of larger multiple family dwelling units. We are reminded that "every line drawn by a Legislature leaves some out that might have been included. That exer-

cise of discrimination, however, is a legislative not a judicial jurisdiction." *Village of Belle Terre* v. *Boraas*, 416 U.S. 1, 8 (1974), as quoted in *City of Manassas* v. *Rosson*, 224 Va. 12 (1982).

It would have been infinitely better if the City had conducted a survey or study to support Mr. Blount's claim that the return to the City, if two or three multiple family dwelling units were included in the ordinance, would not justify the increased costs of administration. Indeed, Defendant's own expert suggests that such a survey should have been conducted. On the other hand, Plaintiffs have not introduced any evidence, such as a random sampling of gallonage used by two and three family dwelling units, to test Mr. Blount's assertions. As already suggested, the burden of proof is on the persons who assail an ordinance to prove that it is clearly unreasonable, arbitrary or capricious and that it bears no reasonable or substantial relation to public safety, morals or general welfare. If in fact the volume of water used by two or three family dwelling units is not large enough to avail the owners of the discount rates for high volume use, and if the additional costs of handling the claims and credits for vacancies would in fact negate any revenue advantage to the City, would not the City's action be justified on a cost basis. There is authority that differentiation is allowable if based on proper classification which bears a reasonable relationship to expenses of supplying water to each. *Kliks* v. *Dalles City*, 216 Ore. 160, 335 P.2d 366.

Most of the cases and authorities cited deal with differences in rates charged different consumers. Here, the rates themselves are not different but only the potential for reduced rates that is available to two and three family dwelling units and effectively denied owners of four or more family dwelling units. Mr. Blount testified that the consumption of the two and three family dwelling units is not sufficient to provide any discount. Therefore, in practical application, there is no differentiation between the two or three and the four or more family dwelling units, and, consequently no unfair or unequal treatment.

The Supreme Court of Virginia in *Fairfax County* v. *Pyles*, 224 Va. 629 (1983), confirmed the standard of review in this state. The Court stated that "if the presumptive reasonableness" of the legislative action

"is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained." The City of Petersburg, in this case, established a rational basis for the omission of some five hundred and sixty two or three multiple dwelling family units from the operation of its ordinance. The Court is, therefore, of the opinion that the action taken by the City should be sustained and the Plaintiffs' Bill for Declaratory Judgment should be dismissed.