# CIRCUIT COURT OF KING GEORGE COUNTY

Wheelabrator Clean Water
System, Inc., et al.

v.

King George County et al.

September 23, 1997

Case No. CH95-82

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this zoning case, a landowner seeks a determination that it has the right to transport biosolids from its storage facility for application on other properties.

### Facts

All of the pertinent facts are stipulated.

Soaring Vista Properties owns Waterloo Farm, a 180-acre farm in an A-1 zoning district in King George County.

Bio Gro is in the business of removing treated and stabilized sewage ("sludge" or "biosolids") from municipal wastewater treatment plants and applying it to agricultural land. Normally, Bio Gro transports the biosolids by truck from municipal plants directly to farms for immediate application. However, federal and state regulations restrict this activity during inclement weather. Therefore, storage facilities are needed so that when land application is prohibited or curtailed, especially during winter, Bio Gro can haul the material from the municipal treatment plants to the storage facilities where it will be held until it can be applied to the farms. Both the land application of biosolids and the storage of biosolids are regulated by federal and state authorities.

Bio Gro owns such a storage facility on Waterloo Farm. The facility has a capacity of approximately 20,000 cubic yards. Bio Gro received permits for the facility from appropriate regulatory agencies and began operation in 1988.

Heretofore, Bio Gro has used its facility only for storage of biosolids to be applied to Waterloo Farm. Because of changes in the zoning ordinance and the manner in which the County recently resolved a dispute with the operator of a similar facility, Bio Gro now contends that it has the right to use its storage facility for off-site application.

In order to understand the controversy, a chronology of events is necessary.

The County adopted its zoning ordinance in 1982 and readopted it with revisions in 1983. That original ordinance allowed the application of biosolids on agricultural land with a conditional use permit. Nothing was said about storage.

In 1984, the County amended its ordinance to permit the application of biosolids on farms in A-1 zoning districts as a matter of right. Again, no mention was made of storage.

On September 3, 1987, the County amended its zoning ordinance to address biosolids storage facilities for the first time. The new provision, § 4.6.2.3, allowed such a storage facility, but only for use on the farm upon which it was located. Transporting the material to any other site was expressly prohibited.

The County issued a building permit to Bio Gro for its Waterloo Farm storage facility on June 10, 1988. The permit bore the notation that biosolids stored in the facility could not be transferred off the property.

As noted above, Bio Gro began operation in 1988.

The County amended § 4.6.2.3 in 1989. In essence, the amendment abolished biosolids storage facilities as a by-right use in A-1 zoning districts and instead required a special use permit. The restriction on the use of such facilities to on-site application of the biosolids remained intact.

On September 23, 1993, the County repealed § 4.6.2.3 in its entirety.

At the same time, an operator of another biosolids storage facility, C & R Contractors, asked the County for permission to transport biosolids from its facility on Dogue Farm for land application on other farms. The request was denied. C & R Contractors filed suit. On December 19, 1994, a consent decree was entered in that case by which C & R Contractors was allowed to transport biosolids from its Dogue Farm storage facility to other farms within a 60-mile radius.

## *Effect of Repeal of § 4.6.2.3*

When the County repealed § 4.6.2.3 in 1993, it removed all reference to biosolid storage facilities in its zoning ordinance.

According to the zoning ordinance, uses not specifically listed are prohibited.

Unlike early zoning ordinances that generally permitted any use not expressly excluded from a particular zoning district, most modern ordinances permit only those uses specifically named and prohibit all others. These modern ordinances are sometimes referred to as "inclusive" zoning ordinances. See *Wiley v. Hanover County*, 209 Va. 153 (1968). The County's ordinance is of that type. Thus, any use not specifically permitted in A-1 zoning districts is prohibited. If biosolid storage facilities are not specifically allowed in A-1 zoning districts, they are prohibited.

It follows that the effect of the 1993 repeal of § 4.6.2.3 is to prohibit biosolids storage facilities, thereby returning the County's zoning law to its pre-1987 status.

## *Non-Conforming Use*

Bio Gro contends that it may continue to operate its facility as a nonconforming use.

A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance or an amendment and is allowed to continue despite the fact that it does not comply with the newly-enacted ordinance or amendment. Such a pre-existing use is a vested right that zoning laws generally cannot annul. *See* 83 Am. Jur. 2d, *Zoning and Planning*, § 624.

Virginia's enabling legislation protects pre-existing uses as "vested rights" but authorizes localities to restrict nonconforming uses in various ways. *See* Virginia Code § 15.1-492. The County ordinance adopts the nonconforming use provisions permitted by state statute.

To qualify as a protected use, the nonconforming use must have existed, in lawful form, prior to the date of adoption of the ordinance or amendment. Here, there is no doubt that Bio Gro operated its biosolids storage facility on Waterloo Farm for several years prior to the 1993 repeal of § 4.6.2.3 which had the effect of banning such facilities. However, there is also no doubt that Bio Gro did *not* operate its facility for storage of biosolids for off-site application.

The second prerequisite for protection as a nonconforming use is that the use must not have been expanded, extended, or enlarged since the effective date of the zoning restriction. This point is pivotal.

Virginia courts have recognized that a nonconforming use need not remain static. Trivial, insubstantial, or reasonably customary and incidental change is permitted. However, unlawful changes of use can result from increased volume or frequency of use. *See* 83 Am. Jur. 2d, *Zoning and Planning*, § 669. The degree of relevance of any change depends in each case upon the quantum of the increase and its effect upon the purposes and policies the zoning ordinance was designed to promote.

The leading case is *Knowlton v. Browning-Ferris*, 220 Va. 571 (1979), in which the Supreme Court held that the magnitude of the change in size and scope and the effects of that change upon the purposes and policies of the zoning ordinance was such that the *character* of the use had changed thereby disqualifying it as a protected nonconforming use. Also see *Spotsylvania County B.Z.A. v. McCalley*, 225 Va. 196 (1983).

In this case, the use in question is and always has been the maintenance of a storage facility to hold biosolids during inclement weather until they can be applied on Waterloo Farm where the facility is located.

While the transportation of biosolids from the storage facility to other sites for land application may be "related to" the use permitted by the zoning ordinance, it is not merely an "accessory or incidental use." *See Knowlton, supra.*

The Court is of the opinion that if the facility were to be used for storage of biosolids destined for other locations, the very nature or character of the use would substantially change, thereby converting it into an impermissible nonconforming use.

The Court agrees with the County's observation in its reply memorandum (p. 10):

> The change proposed by the plaintiffs would fundamentally alter the character of the use. The facility is now in essence an end point at which sludge is deposited before being redistributed upon the adjacent fields. Under the proposed use, the facility would become a transfer point at which sludge would be deposited and then subsequently removed and transported off the property to new locations, with a resulting increase in truck usage and volume of material handled. Such an alteration of a nonconforming use is prohibited.

## Due Process and Equal Protection

In 1991, the County issued a special use permit to C & R Contractors, Inc., for a biosolids storage facility on Dogue Farm. The permit provided that the biosolids stored in the facility were to be applied solely on Dogue Farm.

At the time, a special use permit was needed for a biosolids storage facility in an A-1 zoning district because of the 1989 amendment to the zoning ordinance. Bio Gro did not need a special use permit when it built its storage facility in 1988 because at that time, a biosolids storage facility was a "by-right" use in an A-1 zoning district. However, as noted above, at *all* times the zoning ordinance has prohibited such facilities for anything other than on-site application.

In 1993, C & R requested an amendment to its special use permit that would allow it to transport biosolids from its Dogue Farm facility to other sites for land application. The County repealed § 4.6.2.3 of its zoning ordinance and denied the request.

C & R filed suit. On December 14, 1994, the King George County Circuit Court entered a consent decree in the case by which the County and C & R agreed that C & R could transport biosolids from its facility for land application on farms within a 60-mile radius of the facility.

Bio Gro contends that this action of the County denied it equal protection of the law and due process of law.

With respect to Bio Gro's substantive due process argument,[1] it is obvious that it has been deprived of no protected property interest. The plaintiffs do not have a constitutionally or statutorily protected right to store biosolids on their property for transportation to other sites for land application. From its adoption, the County zoning ordinance has never permitted such activity. Bio Gro cites no authority for the proposition that such ban is impermissible, and none can be found. See, e.g., *Welch v. Rappahannock County*, Rappahannock County Cir. Ct. CH93-32 (1995). The reasonableness of such a prohibition is fairly debatable, *Fairfax County v. Southland Corp.*, 224 Va. 514 (1982), and the ordinance is rationally related to a legitimate governmental interest; thus, the legislative decision to adopt the zoning ordinance containing the prohibition is not subject to a due process attack.

Next, it is obvious that neither Bio Gro nor Soaring Vista Properties has been deprived of all economically viable uses of the property. In fact, they have used the property for many years without being permitted to store biosolids there for off-site application.

---

[1] The due process claim is founded upon substantive, not procedural, due process rights.

It is well settled that when a land use permitted to one owner is restricted to another similarly situated, the restriction is discriminatory and, if not substantially related to the public health, safety, or welfare, denies equal protection of the laws. *James City County v. Rowe*, 216 Va. 128 (1975).

Nevertheless, the equal protection claim asserted here fails for two reasons.

First, the stipulated facts do not constitute evidence from which the court could conclude that Bio Gro and C & R are "similarly situated." The burden is upon one claiming denial of equal protection to show that it is treated differently from others similarly situated. *City of Manassas v. Rosson*, 224 Va. 12 (1982). Whatever the County's reasons for agreeing to the provisions of the consent decree in its litigation with C & R, a variety of reasonable and legitimate factors cannot be discounted. When permitting an activity on one property but prohibiting it on another property in another part of the County, the County may consider a host of circumstances. For example, the size of the properties, topography, and "screening" may be quite different; the density of population, the effect of disturbing noises, the nature of ingress and egress, the width and design of the roads serving the properties, and related factors may differ; and, in this sort of case involving the transportation of sludge, consideration may be given to other off-site factors such as each property's proximity to residential areas, schools, busy intersections, parks, and the like. There is no evidence before the court to demonstrate a reasonable similarity with respect to these matters. Therefore, the plaintiffs have not carried their burden of proving that they are being treated differently from another "similarly situated" property owner.

Finally, in *Rosson, supra*, the Court succinctly pointed out that two wrongs do not make a right. The County's decision to agree to a consent decree in the C & R litigation which is at odds with its zoning ordinance cannot now require the County to permit Bio Gro and others to operate and use their land in violation of the zoning ordinance as well.

Accordingly, the court is of the opinion that Bio Gro has failed to establish a violation of any constitutionally-protected right to use the land as a storage facility for biosolids destined for other sites.

### Other Claims

Bio Gro's other claims are likewise without merit.

References to letters and reports of certain County personnel are immaterial to a disposition of this case. First, there is no indication that Bio Gro was misled to its detriment by such statements. Second, it is axiomatic that the adoption of zoning laws is a legislative function, and when the plain

meaning of the language of the ordinance leads to only one rational conclusion, as here, comments of County employees that may be inconsistent with the ordinance do not create a vested right to engage in activity that violates the ordinance. (The statements referred to by Bio Gro were not made by one authorized to interpret the zoning ordinance in response to a proper request for interpretation. This is not a review of a zoning decision that originated with an interpretation by a zoning administrator under Virginia Code § 15.1-491(d).)

Bio Gro's contention that the County is acting in violation of Virginia Code § 15.1-488 is incorrect. That provision of the enabling legislation requires that zoning regulations must be uniform for each class or kind of use within each zoning district. There is no lack of uniformity in the ordinance's treatment of similar uses within A-1 zoning districts. Waterloo Farm and Dogue Farm and the storage facilities on them are treated identically in the ordinance. And, of course, Bio Gro cannot claim that the two parcels are zoned differently; they are both in A-1 zoning districts. The difference lies in the result of the consent decree discussed above, and that issue must be disposed of in the manner heretofore discussed.

### Conclusion

For the reasons explained, the Court rejects the plaintiffs' requests set forth in the bill for declaratory judgment, refuses to grant the relief sought, and finds in favor of the County with respect to all five counts.