# CIRCUIT COURT OF THE CITY OF NORFOLK

Anne Owens

v.

City Council of the
City of Norfolk et al.

August 5, 2009

Case No. (Civil) L07-5025

BY JUDGE NORMAN A. THOMAS

In this letter opinion, the Court will explain the reasons for its decision to deny the declaratory and injunctive relief requested by the plaintiff, Anne Owens, in the Third Amended Complaint for Declaratory and Injunctive Relief.

In her Complaint, the plaintiff seeks declaratory and injunctive relief against the City Council of the City of Norfolk, the Planning Commission of the City of Norfolk, the City of Norfolk, and Frank Duke, in his official capacity as the director of Planning and Community Development (collectively "the City"). In addition, she joined as a party defendant the

Trustees of Christ and St. Luke's Episcopal Church ("CSL"), following the Court's previous determination that CSL was a necessary party to the lawsuit Owens focuses upon that portion of the City's zoning ordinance that pertains to the HC-G2 District wherein she owns a residence and the process by which a landowner in that district may obtain City authorization to build a structure taller than thirty-five feet.

On September 11, 2007, acting pursuant to Zoning Ordinance §§ 9-0.4 and 9-1.8, City Council enacted Ordinance No. 42,833, wherein it granted CSL a certificate of appropriateness to construct a large scale addition to the church that will total 53 feet in height.[2] Anticipating that the City would grant CSL's applied-for certificate of appropriateness, Owens filed this action on August 21, 2007. Thereafter, the court heard and decided a number of issues raised on demurrer, special pleas, and motions. On October 24, 2007, Owens filed her Amended Complaint for Declaratory and Injunctive Relief. On February 4, 2008, the parties appeared and, building upon the record then established in the case, presented additional evidence and argued Owens' motion for preliminary injunctive relief.

On March 7, 2008, the Court issued a letter opinion [75 Va. Cir. 91]. It explained the reasons for its decision to grant Owens' request for preliminary injunctive relief. On March 25, 2008, the Court entered its Preliminary Injunction Order, which enjoined the Director of the Department of Planning and Community Development, in his official capacity, "from issuing any building permit pursuant to the certificate of appropriateness issued to CSL on September 11, 2007, pursuant to Norfolk City Ordinance No. 42,833." That preliminary injunction has remained in effect until today's date. However, with the entry of the final Order accompanying this letter opinion, the preliminary injunction is dissolved.

---

[2] Zoning Ordinance § 9-0.4 outlines the process by which a landowner in one of Norfolk's Historic and Cultural Conservation districts (hereinafter "historic districts") may obtain a certificate of appropriateness to alter the exterior appearance of, demolish, or build any structure within such district. Zoning ordinance § 9-1.8 pertains to height requirements in the HC-G2 District, one of the three historic districts comprising Norfolk's Ghent neighborhood, as follows: *Height requirements*: (a) *Maximum height*: 35 feet; (b) *Minimum height*: 25 feet; (c) *Variations from height limits*: Notwithstanding the above provisions, where certificates of appropriateness approve greater or lesser heights, on grounds of existing conditions, relationships to adjacent buildings and open space, protection of views, or similar considerations, such heights shall be permitted as authorized variations from the height requirements established in § 9-1.8(a) and (b).

The litigation has been protracted during its nearly two-year life span. On August 22, 2008, Owens filed a Second Amended Complaint for Declaratory and Injunctive Relief. The Third Amended Complaint for Declaratory and Injunctive Relief later succeeded that pleading and, since the time of the preliminary injunction's entry, the parties have further developed the factual record and refined their legal arguments. The court sincerely appreciates counsel's time, efforts, and civility toward each other throughout this lengthy case.

In the Complaint, Owens alleges that the process utilized by the City to grant CSL a certificate of appropriateness to construct a 53 feet tall building addition exceeds the scope of applicable state enabling legislation and otherwise fails to pass constitutional muster. Specifically, Owens contends that the process of granting CSL an "authorized variation" from the 35 feet maximum height requirement applicable to the HC-G2 District constitutes an "illegal variance." Owens asserts that Zoning Ordinance § 9-0.4, respecting issuance of certificates of appropriateness, as enacted and utilized here to obtain an "authorized variance" from the maximum height requirement in that district, unlawfully fails to include Board of Zoning Appeals ("BZA") or appropriate judicial review. She contends that the process thus improperly excluded surrounding property owners and other affected persons such as herself from participating in the decision to grant the certificate of appropriateness.

As a result of these alleged legal defects, Owens seeks declaratory and permanent injunctive relief on the following bases: that the certificate of appropriateness process as it pertains to the HC-G2 District's maximum height requirement violates Dillon's Rule and therefore is void, and that it violates her constitutional rights to procedural due process, substantive due process, and equal protection to laws guaranteed to her by the Fourteenth Amendment of the United States Constitution.

In seeking relief, Owens prays for the Court to enjoin the City from approving illegal variances under the guise of "authorized variations," to declare that the City has "no authority to approve the illegal variances or authorized variations of height limits within zoning districts in the City of Norfolk" and that Zoning Ordinance § 9-1.8 "is void to the extent it purports to allow the [Planning] Commission or Council to approve illegal variances or 'authorized variations'," to enjoin the City "from issuing any permit of any kind for the CSL Project unless said project has received a variance from the Board of Zoning Appeals," and to enjoin the City "from issuing any permit of any kind for any project in the HC-G2 District, including the CSL Project, calling for the erection of any structure that exceeds 35 feet or

otherwise violates the provisions of the [Virginia] Code unless said project has received a variance from the Board of Zoning Appeals." (Clarifications added.)

In their answers to the Complaint, the City and CSL deny Owens' substantive allegations regarding any state law or federal constitutional violations. In addition, each defendant raised substantive and procedural defenses that the Court either previously adjudicated or deferred pending trial.

Virginia case law firmly establishes that municipal zoning ordinance provisions enjoy a presumption of correctness and, at trial, Owens bore the burden of rebutting that presumption. *See, Fairfax County Board of Supervisors v. Horne*, 216 Va. 113, 117-18, 215 S.E.2d 453, 456 (1975); *Cupp v. Fairfax County Board of Supervisors*, 227 Va. 580, 596-97, 318 S.E.2d 407, 415-16 (1984); *Fairfax County Board of Supervisors v. Carper*, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959).

In *Carper*, the Court discussed the burden of proof in cases such as this one:

> The general principles applicable to a judicial review of the validity of zoning ordinances are well settled. The legislative branch of the local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary, or capricious, and that there is no reasonable or substantial relation to the public health, safety, morals or general welfare. The court will not substitute its judgment for that of a legislative body, and, if the reasonableness of a zoning ordinance is fairly debatable, it must be sustained. *Board of County Supervisors of Fairfax County v. Davis*, 200 Va. 316, 322, 106 S.E.2d 152, 157; *West Brothers Brick Co. v. City of Alexandria*, 169 Va. 271, 288, 192 S.E. 881, 888 (*appeal dismissed* 302 U.S. 658, 58 S. Ct. 369, 82 L. Ed. 508, *rehearing denied* 302 U.S. 781, 58 S. Ct. 480, 82 L. Ed. 603). The exercise of the police power is subject to the constitutional guarantee that no property shall be taken without due process of law, and, where the police power conflicts with the Constitution, the latter is supreme, but courts will not restrain the exercise of such power except when the conflict is clear. *West Brothers Brick Co. v. City of Alexandria, supra* [169 Va. at 281, 192 S.E. at 885].

*Id.* at 660, 107 S.E.2d at 395.

Against this backdrop, the Court turns to the merits of Owens' various claims for relief.

## I. *Dillon's Rule*

Dillon's Rule holds that a municipal corporation, as a political subdivision of the state, possesses only those powers legislatively granted to it and those powers fairly implied from or indispensable to such express grants of power. *See discussion, City of Richmond v. Henrico Board of Supervisors,* 199 Va. 679, 684-85, 101 S.E.2d 641, 644-45 (1958). The Dillon's Rule of strict construction invalidates municipal ordinances and renders void municipal actions that exceed the reasonable scope of powers so granted through enabling legislation. *Id.; see also, Augusta County Board of Supervisors v. Countryside Investment Co.,* 258 Va. 497, 502-03, 522 S.E.2d 610, 612-13 (1999); *Fairfax County Board of Supervisors v. Horne, supra,* 216 Va. at 117, 215 S.E.2d at 455-56.

Zoning ordinances result from legislatively granted authority for local governments to regulate land use pursuant to the police power. *Cochran v. Fairfax County Board of Zoning Appeals,* 267 Va. 756, 764-65, 594 S.E.2d 571, 576-77 (2004); *Fairfax County Board of Supervisors v. Snell Const. Corp.,* 214 Va. 655, 658-59, 202 S.E.2d 889, 892-93 (1974); *West Brothers Brick Co. v. City of Alexandria,* 169 Va. 271, 281-82, 192 S.E. 881, 885 (1937). As noted above, localities must exercise this authority within statutory limitations, or else courts will declare it void. *Augusta County Board of Supervisors v. Countryside Investment Co., supra,* 258 Va. at 502-03, 522 S.E.2d at 612-13. Zoning ordinance provisions also must comport with constitutional due process and equal protection requirements. *West Brothers Brick, supra,* 169 Va. at 281, 192 S.E. at 885; *City of Manassas v. Rosson,* 224 Va. 12, 17-19, 21, 294 S.E.2d 799, 802, 804 (1982).

As stated in *James City County Board of Supervisors v. Rowe,* 216 Va. 128, 137, 216 S.E.2d 199, 208, "[i]n determining the constitutional scope of the zoning police power delegated to local governments in Virginia, we look first to our own enabling statutes." In this case, the defendants contend that the City properly enacted its historic district zoning provisions pursuant to the enabling authority of Virginia Code § 15.2-2306. *See,* Zoning Ordinance §§ 9-0.1 through 9-4.10. This includes § 9-1.8 pertaining to the HC-G2 District's building height requirements. Owens makes no challenge to the validity of Va. Code § 15.2-2306.

In Virginia Code § 15.2-2306, the General Assembly empowered localities to adopt ordinances designed to facilitate preservation of historical sites and architectural areas.[3] In that statute, the local governing body may "provide for a review board to administer the ordinance," and the "ordinance may include a provision that no building or structure . . . shall be erected within any such district unless approved by the review board or, on appeal, by the governing body of the locality as being architecturally compatible with the historic landmarks, buildings, or structures therein." *See*, Va. Code § 15.2-2306(A)(1). The locality "shall specify therein the parties entitled to appeal" such decisions to the circuit court "for review by filing a petition at law[.]" *See*, Va. Code § 15.2-2306(A)(3); *and see, Anne Owens et al. v. City Council of the City of Norfolk et al.*, Civil Action No. CL05-1334.

The City enacted numerous provisions within its zoning ordinance pursuant to this legislative authority. *See*, Zoning Ordinance § 9-0 *et seq*. The district regulations for the HC-G2 District are found at zoning ordinance §§ 9-1.1 through 9-1.9. With respect to certificates of appropriateness to erect a building greater than 35 feet in height, only the applicant therefor enjoys appellate rights. *See*, Zoning Ordinance §§ 9-0.4(m) and 9-1.8(c). Regarding the language of § 9-1.8(c), Owens argues that the certificate of appropriateness made available thereunder as a prerequisite to construction of a building taller than 35 feet constitutes an "illegal variance."

Owens' position necessarily presupposes that the maximum allowed building height in such district is 35 feet and that buildings in excess of that height thus are not permitted. Upon consideration of the evidence in this case, the court rejects that position. To the contrary, the Court concludes that buildings in excess of 35 feet in height constitute a permitted land use in the HC-G2 District, albeit one receiving especial scrutiny from the Planning

---

[3] Traditionally, under Virginia jurisprudence, localities could not regulate land use when aesthetic considerations constituted the political subdivision's exclusive motivation. In *Kenyon Peck, Inc. v. Kennedy*, 210 Va. 60, 64-65, 168 S.E.2d 117, 120-21 (1969), the Court stated: "There is a generally accepted rule that a state, municipality, or county cannot limit or restrict the use which a person may make of his property under the guise of its police power where the exercise of such power would be justified solely on aesthetic considerations. However, aesthetic considerations are not wholly without weight and need not be disregarded in adopting legislation to promote the general welfare. *West Brothers Brick Co. v. Alexandria, supra*, 169 Va. at 282, 283, 192 S.E. at 885, 886; 16 Am. Jur. 2d, *Constitutional Law*, § 292, pp. 569-72, and the cases there cited in the footnotes. . . . Although aesthetic considerations alone may not justify police regulations, the fact that they entered into the reasons for the passage of an act or ordinance will not invalidate it if other elements within the scope of the police power are present." (Citations omitted.)

Commission, which body represents the "review board" selected by the City to administer its zoning ordinance provisions pertaining to historic districts. *See,* Virginia Code § 15.2-2306(A)(1) and Zoning Ordinance § 9-0.3.

During the trial, the City presented expert testimony from Paige Pollard of the Commonwealth Preservation Group. Among other things, Ms. Pollard testified that within a given historic area and, in particular, within Norfolk's Ghent-area historic districts, building height requirements play an integral role in determinations whether a specific proposed structure will be architecturally compatible with its environs. Thus, although one might well categorize building height requirements as a traditional staple of land use regulation, it represents one of many factors relevant to the holistic approach to historic area land use regulation envisioned by Virginia Code § 15.2-2306(A)(1).

The City also introduced a May 1976 study conducted by the Norfolk Department of City Planning entitled "*Ghent: Proposed Zoning for Historic and Cultural Conservation*" (the "report"). The report, approximately 100 pages in length, focused upon Norfolk's Ghent neighborhood and its character, including description and analysis of the neighborhood's origin, development, architecture, and environment, factors that then-affected conservation efforts in the neighborhood, historic and cultural objectives, including a strategy for coordinated conservation efforts, and outlined a plan for historic and cultural conservation within the neighborhood. The report proposed zoning for the neighborhood, which proposal ultimately came to fruition and, although somewhat modified over the years, today is embodied in § 9-0.1 *et seq.* of Norfolk's Zoning Ordinance. Without question, the report, and the data upon which it was based, made a strong case for historic district zoning regulation in the Ghent neighborhood, including the geographic area of the current HC-G2 District.

The report contained numerous passages supporting a flexible approach to height requirements within the then-proposed Ghent historic districts, some of which passages are noted below:

> Based on this review, the main conclusion is that the architectural character of Ghent is based upon architectural diversity, numerous styles that create interest though variation and personalization. Ghent reflects the ideals of earlier era, expressive of social and economic status as security, as each building embodies the individual tastes and preferences of the developers and original inhabitants. In general, the overall street scene appears harmonious in most parts of Ghent, but each

building contains such variety that uniform descriptions and regulations are difficult to achieve. A variety within a fairly uniform scale is the best way to describe the character of Ghent.

Report, page 22.

Several features of Ghent buildings deserve special mention. These include fenestration, porches building materials, building height, and building spacing and lot coverage.

Report, page 26.

One of the major unifying factors in Ghent is building height. The majority of free-standing houses and row houses are 2½ stories while the walkup apartment buildings range from 3 to 4 stories in height. The churches are generally between two and three stories, but their actual height exceeds that of the apartment buildings. These steeples add interest and variety to the otherwise uniform skyline. Because of its unifying influence, the height of new buildings should be controlled and should conform to the established height of existing buildings. This does not mean that new buildings will have to contain the same number of stories as the original buildings, because of possible variations in ceiling heights.

Report, page 27.

The overall Ghent "scene" is characterized by unexpected accents, emphasizing human scale, inventiveness and individual creativity, and a successful integration of man-made structures and the natural environment. The street scene relationships, a basic building block of the overall framework, are formed by uniform height, set back, building color, and fenestration design, as well as the regular occurrence porches, terraces, or stoops. . . . [T]he potential dullness and monotony of the ordered scene is prevented by the diversity of architectural forms, details, and ornamentation, creating a variety of facades and structural shapes. . . .

Report, page 39.

> The dynamic nature of these factors often results in the institution of changes which may adversely affect the conditions and character of Ghent. . . . [F]rom an analysis of existing conditions and trends, it appears that, unless special controls are instituted, aimed at preserving the original character of Ghent, changes which adversely affect the area will continue to occur. By modifying these proposed changes to conform to historic and cultural zoning objectives, new construction and rehabilitation activities will be adapted to the character of the area.

Report, page 51.

The report, at page 78, proposed language for a flexible, yet regulated, approach to building heights within the historic districts proposed for the Ghent neighborhood, as follows:

> 491.7 *Height Regulations*. In the HC-1A and HC-1B districts and the HC-1T Transitional District, maximum height of buildings shall be 35 feet and minimum height of buildings shall be 25 feet.[4]
>
> 491.7.1 *Variations from Height Limits*. Notwithstanding the above provision, it is expressly provided that where certificates of appropriateness approve greater or lesser heights, on grounds of existing conditions, relationships to adjacent buildings and open space protection of view or similar considerations, such height shall be permitted.

The above-quoted language represents precursor language to Zoning Ordinance § 9-1.8, specifying height requirements in the HC-G2 District. The City readily concedes that § 9-1.8 does not represent the clearest language that might have been chosen to accomplish its intended purpose, especially when *all* proposed new structures in the HC-G2 District require a certificate of appropriateness, regardless of the structure's intended height.

Nevertheless, the court concludes that § 9-1.8 constructs a flexible regulatory approach to height requirements for new construction within the HC-G2 District conforming to legislative aims for this historic district.

---

[4] The current HC-G2 district originally was designated as the HC-1B district. *See*, Report at pages 3 and 57.

Consistent with the report's findings regarding predominant building heights in the neighborhood, subsections (a) and (b) thereof provide for a maximum height of 35 feet and a minimum height of 25 feet, so long as the building's proponent obtains a certificate of appropriateness as required by Zoning Ordinance § 9-0.4. In addition, in keeping with the report's recommendation for flexibility in height regulation, § 9-1.8(c) *permits* greater or lesser heights, dubbed "authorized variations," when the Planning Commission (or City Council) determines that the proposed structure is architecturally compatible with its surroundings.

The Court holds that this legislative scheme for variable height regulation in the HC-G2 District falls within the permissible scope of Virginia Code § 15.2-2306 provisions. That statute represents a broad grant of legislative authority to localities to enact zoning provisions tailored to preserving the unique character of their historic areas. Owens did not carry her burden to prove a Dillon's Rule violation respecting Zoning Ordinance § 9-1.8.

## II. *Equal Protection*

Within the zoning context, the Virginia Supreme Court has spoken to equal protection claims in terms of examining whether the governmental classification is "reasonable not arbitrary . . . and bears a rational relationship to a permissible state objective." *See, City of Manassas v. Rosson, supra,* 224 Va. at 18, 294 S.E.2d at 802. Notwithstanding the rebuttable presumption of validity of zoning enactments, the Court noted in *Rosson* " that no matter how legitimate the legislative goal may be, the police power may not be used to regulate property interests unless the means employed are reasonably suited to the achievement of that goal." *Id. quoting, Alford v. Newport News,* 220 Va. 584, 586, 260 S.E.2d 241, 243 (1979).

In this case, the Court's equal protection inquiry necessarily must examine the purported rational basis for and the reasonableness of the impact upon Owens of the certificate of appropriateness process respecting height requirements in the HC-G2 District. Based upon the totality of evidence in this case, including the Court's above-noted recounting of the City's legislative bases for its scheme of flexible regulation of permissible building heights building within its historic districts, the Court finds that Owens failed to carry her burden to establish that § 9-1.8 is unreasonable, arbitrary, or capricious, or otherwise lacking a reasonable or substantial relationship to that section's intended lawful purpose. *See, Fairfax County Board of Supervisor v. Carper, supra,* 200 Va. at 660, 107 S.E.2d at 395. *See also, discussion, City Council*

*of Virginia Beach v. Harrell,* 236 Va. 99, 101-02, 372 S.E.2d 139, 141 (1988).

In addition, as more fully commented upon below, Owens did not establish any legally significant negative impact upon her residential property.

### III. *Due Process Claims*

Land use regulation necessarily seeks to strike a proper balance between private property rights and the public interest. *See, Fairfax County Board of Supervisors v. Snell Construction Corp., supra,* 214 Va. at 657-58, 202 S.E.2d at 892; *Cole v. Waynesboro City Council,* 218 Va. 827, 834, 241 S.E.2d 765, 770 (1978); *Fairfax County Board of Supervisors v. Horne,* 216 Va. at 120, 215 S.E.2d at 458. Also, within a given zoning district, one landowner's property interests may well conflict with those of a nearby landowner seeking to construct a new building or an addition to an existing one.

However, when, as here, the proponent of new construction, with respect to property in an historic district, pursues property development in full accord with the permitted uses and regulatory requirements of a local ordinance properly enacted under the authority of Virginia Code § 15.8-2306(A)(1), an objecting landowner such as Owens does not possess a colorable due process claim.

Significantly, as noted above, Virginia Code § 15.2-2306(A)(3) empowers the locality to determine who shall enjoy appellate rights from the decisions made pursuant to its historic district zoning provisions. According to Zoning Ordinance § 9-0.4(m), only "[a]pplicants for certificates of appropriateness shall have the right to appeal" from the Planning Commission to the Council or from a decision of Council to this court.

In addition, with respect to her own property interests, the record reveals that Owens established only a *de minimis* effect upon her property from CSL's proposed construction. Moreover, such effects are those shared generally by the local population of property owners. Owens presented no expert testimony that CSL's construction of the proposed building addition will diminish her property's value or cause any other harm to her that the court might characterize as "irreparable" in nature. Indeed, Owens failed to produce any factual evidence to support a negative effect upon her property interests beyond her initial offerings on the issues of justiciability and standing to seek declaratory and injunctive relief.

In sum, Owens failed to meet her burden to establish either a procedural or a substantive due process violation vis-à-vis CSL's utilization of Zoning

Ordinance §§ 9-0.4 and 9-1.8 to obtain a certificate of appropriateness for its proposed 53 foot tall building addition. *See generally*, *Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322 (4th Cir., 2005), *cert. denied*, 547 U.S. 1039, 122 S. Ct. 1618, 164 L. Ed. 2d 333 (2006), *and*, *Helping Hand, L.L.C. v. Baltimore County, Md.*, 515 F.3d 356 (4th Cir. 2008), which cases discuss the elements of procedural and substantive due process violation claims.

Based upon the foregoing discussion, the court will deny Owens' prayers for declaratory and injunctive relief and dismiss the Complaint.

Upon making these decisions, the Court need not address any other defenses previously deferred pending trial.