Present: Hassell, C.J., Lacy, Koontz, Kinser, Lemons and
Agee, JJ., and Russell, S.J.


DONALD H. COCHRAN, ET AL.
                                        OPINION BY
v.  Record No. 030982        SENIOR JUSTICE CHARLES S. RUSSELL
                                      April 23, 2004
FAIRFAX COUNTY BOARD OF
ZONING APPEALS, ET AL.

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    M. Langhorne Keith, Judge


VIRGINIA C. MacNEAL

v.  Record No. 031770

TOWN OF PULASKI BOARD OF
ZONING APPEALS, ET AL.

            FROM THE CIRCUIT COURT OF PULASKI COUNTY
                    Robert M. D. Turk, Judge

BOARD OF ZONING APPEALS OF
THE CITY OF VIRGINIA BEACH

v.  Record No. 031771

JACK PENNINGTON, ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Alan E. Rosenblatt, Judge[1]


        These three cases involve decisions by local boards of

zoning appeals (collectively and individually, BZA) upon

applications for variances from the local zoning ordinances.

Although the facts and proceedings differ in each case, and

_____

        [1] The record indicates that although Judge Rosenblatt
entered the final order, the case was heard and decided by the
Honorable Frederick B. Lowe.

will be discussed separately, the governing principles of law are the same.  We therefore consider and decide the cases in a single opinion.

THE FAIRFAX CASE

Michael R. Bratti was the owner of a tract of land containing approximately 20,470 square feet, in the McLean area of Fairfax County.  The property was zoned R-2, a residential classification permitting two dwelling units per acre, and was improved by a home in which Bratti had resided for eight years.  The zoning ordinance required side yard setbacks of at least 15 feet from the property lines. Bratti's existing home fit well within the setbacks.

Bratti filed an application with the BZA for four variances.  He proposed to demolish his existing home and erect a much larger house on the site.  The proposed structure would come within 13 feet of the northerly property line, rather than the 15 feet required by the ordinance, and would be further extended into the setback area by three exterior chimneys which would extend beyond the northerly wall of the house.  The proposed house would be 71 feet wide and 76 feet from front to back.  The proposed encroachment into the side yard setback would extend the entire 76 foot depth of the house.

It was undisputed that Bratti's proposed house could be built upon the existing lot without any need for a variance by simply moving it two feet to the south, plus the additional distance required by the chimneys. Bratti explained to the Board, however, that he desired to have a "side-load" garage on the south side of his house and that a reduction of two feet of open space on the south side would make it inconvenient for vehicles to turn into the garage. The present house had a "front-load" garage which opened directly toward the street. When it was pointed out to Bratti that he could avoid this problem by reconfiguring his proposed house to contain a "front-load" garage, he responded that such a house would have less "curb appeal" than the design he proposed.

If the house were built in its proposed location, but reduced in size by two feet to comply with the zoning ordinance, there would be a resulting loss of 152 square feet of living space. The topography of the lot was such that it rose 42 feet vertically throughout its 198-foot depth from the street to the rear property line. However, there were two relatively level areas shown on the plans for the proposed dwelling, one in front of the house and one in the rear. It was conceded that an additional 152 square feet of living space could have been constructed in either of these areas,

3

but Bratti explained that he wanted to use the level area in front of the house as a play area for children and for additional parking, and that he was unwilling to encroach upon the level area in the rear because he desired to use it as a large outdoor courtyard which he said was "the central idea in the house."

The proposed dwelling had two stories. A third story could have been added as a matter of right, without variances. Bratti conceded that this could easily be done and would more than accommodate the 152 square feet lost by compliance with the zoning ordinance, but that it would be aesthetically undesirable, causing the house to appear to be a "towering structure" as seen from the street.

Over the opposition of a number of neighbors, the BZA granted all four variances. The BZA made findings of fact, including the following: "3. The lot suffers from severe topographical conditions which the applicant has worked hard to accommodate. . . . 5. The requests are modest." This was followed by a conclusion of law:

> THAT the applicant has satisfied the Board that physical conditions as listed above exist which under a strict interpretation of the Zoning Ordinance would result in practical difficulty or unnecessary hardship that would deprive the user of all reasonable use of the land and/or buildings involved.

The objecting neighbors petitioned the circuit court for certiorari.  The Board of Supervisors of Fairfax County obtained leave of court to enter the case as an additional petitioner, opposing the variances.  The court, after a hearing, affirmed the decision of the BZA and entered an order dismissing the petition for writ of certiorari.  The objecting neighbors and the Board of Supervisors brought this appeal.

THE PULASKI CASE

Jack D. Nunley and Diana M. Nunley owned a corner lot in the Town of Pulaski that contained .6248 acre.  The lot was bounded by public streets on three sides.  A street 40 feet wide ran along the front of the property and the intersection of that street with a street approximately 30 feet wide formed the southeastern corner of the lot.  The 30-foot street ran northward from the intersection, forming the eastern boundary of the lot, and then curved to the west to form the lot's northern boundary.  The curvature was gradual, having a radius of 34.53 feet.  This curve formed the northeasterly corner of the lot.

The property was zoned R-1, a residential classification which contained a special provision relating to corner lots:

> The side yard on the side facing the side street shall be at least 15 feet from both main and accessory structures.

Town of Pulaski, Va., Zoning Ordinance, art. IV § 2.6.2 (2002).

The Nunleys petitioned the BZA for a variance from the required 15-foot set back to zero feet, in order to construct a garage at the northeast corner of the lot, the northeast corner of which would be placed tangent to the curving property line. There was no existing garage on the property, and the Nunleys explained that placing a garage in this location would provide the easiest access to the street. The topography of the lot was difficult, the curve along the 30-foot street lying at a considerable elevation above the floor level of the existing house. The garage could be constructed closer to the house without the need for a variance, but this would require construction of a ramp that would add considerably to the expense of the project. Also, the Nunleys explained, there was a stone retaining wall, five feet in height, behind the house that would be weakened or destroyed if the garage were to be built closer to the house.

Neighbors objected, pointing out to the BZA that the construction of the garage so close to the corner would create a blind area that would be dangerous for traffic coming around the curve on the 30-foot street. They also complained that it would be an "eyesore" and would destroy existing vegetation.

The BZA had some difficulty with the question whether the Nunleys' request involved a "hardship" as required by law. The BZA held four meetings to discuss the question and obtained an opinion from the town attorney. The BZA eventually granted the Nunleys a modified variance, permitting an accessory structure no closer than five feet from the northern projected boundary and no closer than 15 feet from the eastern projected boundary of the property. The modified variance also provided that construction should not "alter or destroy the aesthetic looks of existing vegetation bordering the northern projected boundary" of the property.

Virginia C. MacNeal, a neighbor who had objected to the variance before the BZA, filed a petition for certiorari in the circuit court. The court, in a letter opinion, affirmed the decision of the BZA and denied the petition for certiorari. Virginia C. MacNeal brought this appeal.

THE VIRGINIA BEACH CASE

Jack and Rebecca Pennington owned a 1.25-acre parcel of land in a subdivision known as Avalon Terrace, in the City of Virginia Beach. The property was improved by their home, in which they had lived for many years, and a detached garage containing 528 square feet which they had built in 1972. The property was zoned R-10, a single-family residential classification permitting four dwelling units per acre. The

7

ordinance contained a limitation on "accessory structures" by requiring that they "do not exceed five hundred (500) square feet of floor area or twenty (20) percent of the floor area of the principal structure, whichever is greater."  The size of the Penningtons' home was such that the 500 square-foot limitation applied to their property.

The Penningtons applied to the BZA for a variance permitting accessory structures containing a total of 816 square feet, in lieu of the 500-square foot limitation.  They explained that the purpose of the request was to permit the construction of a storage shed, 12 by 24 feet, adjacent to the garage, and also to bring into conformity the 28 square feet by which the existing garage exceeded the limitation imposed by the zoning ordinance.

The Penningtons could have built the storage shed as an appendage or as an addition to the existing house without the need for any variance, but their representative explained to the BZA that their lot was so large that the shed would be nearly invisible from the street and would have no impact upon neighboring properties.  He contended that the obvious purpose of the size limitation on accessory structures, as contained in the ordinance, was to inhibit the erection of large, unsightly outbuildings on small lots.  He pointed out that the Penningtons' lot was so large that four dwelling sites could

be carved out of it, and that therefore the impact of a small additional outbuilding would be minimal and would not contravene the spirit of the zoning ordinance.  He also pointed out that a number of the neighbors were related to the Penningtons and that no neighbors had any objection to their request.

The zoning administrator of the City of Virginia Beach opposed the request, pointing out that there was no need for a variance because the desired storage shed could be built as an appurtenance to the existing house.  The zoning administrator had no objection to a variance to the extent of the 28 square feet needed to bring the existing garage into conformity with the zoning ordinance.  The BZA granted the variance to bring the garage into conformity, but denied the remainder of the Penningtons' request on the ground that no "hardship" existed.

The Penningtons filed a petition for certiorari in the circuit court.  At a hearing on the petition, counsel for the Penningtons asserted a claim of hardship that had not been presented to the BZA:  Mr. Pennington was seriously ill and disabled.  His wife had full-time employment, was the "bread-winner" of the family and was therefore unable to care for him during the day.  The Penningtons' daughter, who had recently graduated from college, had returned to live with the Penningtons and assist in the care of her father.  The storage

shed was needed as a place to store her belongings.  The court

ruled that a hardship existed, overruled the decision of the

BZA and granted the Penningtons' requested variance.  The BZA

brought this appeal.

ANALYSIS

Zoning is a valid exercise of the police power of the

Commonwealth.  West Brothers Brick Co. v. Alexandria, 169 Va.

271, 281, 192 S.E. 881, 885 (1937).  Zoning ordinances, of

necessity, regulate land use uniformly within large districts.

It is impracticable to tailor such ordinances to meet the

condition of each individual parcel within the district.  The

size, shape, topography or other conditions affecting such a

parcel may, if the zoning ordinance is applied to it as

written, render it relatively useless.  Thus, a zoning

ordinance, valid on its face, might be unconstitutional as

applied to an individual parcel, in violation of Article 1,

§ 11 of the Constitution of Virginia.

> Because a facially valid zoning ordinance may prove
> unconstitutional in application to a particular
> landowner, some device is needed to protect
> landowners' rights without destroying the viability
> of zoning ordinances.  The variance traditionally
> has been designed to serve this function.  In this
> role, the variance aptly has been called an "escape
> hatch" or "escape valve."  A statute may, of course,
> authorize variances in cases where an ordinance's
> application to particular property is not
> unconstitutional.  However, the language used in
> Code § 15.1-495(b) [now § 15.2-2309(2)] to define
> "unnecessary hardship" clearly indicates that the

10

> General Assembly intended that variances be granted
> <u>only in cases where application of zoning
> restrictions would appear to be constitutionally
> impermissible</u>.

<u>Packer v. Hornsby</u>, 221 Va. 117, 122, 267 S.E.2d 140, 142 (1980) (emphasis added) (citations omitted).

Therefore, the BZA has authority to grant variances only to avoid an unconstitutional result.  We said in <u>Commonwealth v. County Utilities</u>, 223 Va. 534, 290 S.E.2d 867 (1982):

> All citizens hold property subject to the proper
> exercise of police power for the common good.
> <u>Sanitation Commission v. Craft</u>, 196 Va. 1140, 1148,
> 87 S.E.2d 153, 158 (1955).  Even where such an
> exercise results in substantial diminution of
> property values, an owner has no right to
> compensation therefor.  <u>Miller v. Schoene</u>, 276 U.S.
> 272 (1928), <u>Hadacheck v. Sebastian</u>, 239 U.S. 394
> (1915).  In <u>Penn Central Transportation Co. v. City
> of New York</u>, 438 U.S. 104 (1978), the Supreme Court
> held that no taking occurs in the circumstances
> unless the regulation interferes with <u>all reasonable
> beneficial uses of the property, taken as a whole</u>.

<u>Id.</u> at 542, 290 S.E.2d at 872 (emphasis added).

The BZA, when considering an application for a variance, acts only in an administrative capacity.  See <u>Gayton Triangle v. Henrico County</u>, 216 Va. 764, 222 S.E.2d 570 (1976).[2]  Under fundamental constitutional principles, administrative officials and agencies are empowered to act only in accordance

---

[2] By contrast, when the BZA considers applications for special exceptions or special use permits, it acts in a legislative capacity and its decision must be sustained if the record shows the issue to be "fairly debatable."  <u>Ames v. Town of Painter</u>, 239 Va. 343, 348, 389 S.E.2d 702, 704 (1990).

11

with standards prescribed by the legislative branch of government.  To hold otherwise would be to substitute the will of individuals for the rule of law.  See e.g., Thompson v. Smith, 155 Va. 367, 379, 154 S.E. 579, 584 (1930); Bell v. Dorey Electric Company, 248 Va. 378, 380, 448 S.E.2d 622, 623 (1994); York v. City of Danville, 207 Va. 665, 672, 152 S.E.2d 259, 264 (1967); Assaid v. City of Roanoke, 179 Va. 47, 50, 18 S.E.2d 287, 288 (1942).  The General Assembly has prescribed such standards regulating the authority of the BZA to grant variances by enacting Code § 15.2-2309(2) which provides, in pertinent part:

> Boards of zoning appeals shall have the following powers and duties:
>
> . . . .
>
> (2) To authorize . . . such variance as defined in § 15.2-2201 from the terms of the ordinance as will not be contrary to the public interest, when, owing to special conditions a literal enforcement of the provisions will result in unnecessary hardship; . . . as follows:
>
> . . . where by reason of exceptional topographic conditions or other extraordinary situation or condition of the piece of property . . . the strict application of the terms of the ordinance would effectively prohibit or unreasonably restrict the utilization of the property or where the board is satisfied, upon the evidence heard by it, that the granting of the variance will alleviate a clearly demonstrable hardship approaching confiscation, as distinguished from a special privilege or convenience sought by the applicant . . . .

12

No such variance shall be authorized by the board unless it finds:

(a) That the strict application of the ordinance would produce undue hardship . . . .

Adhering to the rule in Packer, we construe the statutory terms "effectively prohibit or unreasonably restrict the utilization of the property," "unnecessary hardship" and "undue hardship" in that light and hold that the BZA has no authority to grant a variance unless the effect of the zoning ordinance, as applied to the piece of property under consideration, would, in the absence of a variance, "interfere with all reasonable beneficial uses of the property, taken as a whole."[3] County Utilities Corp., 223 Va. at 542, 290 S.E.2d at 872.

## CONCLUSION

Notwithstanding the presumption of correctness to which the decision of the BZA is entitled, Code § 15.2-2314, each of

---

[3] The Fairfax BZA argues that in Natrella v. Board of Zoning Appeals, 231 Va. 451, 345 S.E.2d 295 (1986), we pointed out that the foregoing statutory terms are written in the disjunctive and therefore implied that "unnecessarily restrict the use of the property" meant something less than an unconstitutional interference with property rights, thereby departing from the rule in Packer. On the contrary, Natrella involved the conversion of a rental apartment project into a condominium with no physical change to the land or buildings. A statute, Code § 55-79.43, expressly protected such conversions from the impact of zoning ordinances, a situation foreseen in Packer: "A statute may, of course, authorize variances in cases where an ordinance's application to

13

the present cases fails to meet the foregoing standard. The proposed house in Fairfax could have been reconfigured or moved two feet to the south, avoiding the need for a variance. Indeed, the project could simply have been abandoned and the existing use continued in effect. The proposed garage in Pulaski could have been moved to another location on the lot, or the project abandoned. The shed in Virginia Beach could have been built as an addition to the existing house, or the project abandoned. Without any variances, each of the properties retained substantial beneficial uses and substantial value. The effect of the respective zoning ordinances upon them in no sense "interfere[d] with all reasonable beneficial uses of the property, taken as a whole."

Compelling reasons were presented in favor of each of the applications for variances: The desires of the owners, supported by careful planning to minimize harmful effects to neighboring properties; probable aesthetic improvements to the neighborhood as a whole, together with a probable increase in the local tax base; greatly increased expense to the owners if the plans were reconfigured to meet the requirements of the zoning ordinances; lack of opposition, or even support of the

---

particular property is <u>not</u> unconstitutional." <u>Packer</u>, 221 Va. at 122, 267 S.E.2d at 142 (emphasis added).

14

application by neighbors; and serious personal need, by the owners, for the proposed modification.

When the impact of the zoning ordinance is so severe as to meet the foregoing standard, the BZA becomes vested with wide discretion in tailoring a variance that will alleviate the "hardship" while remaining "in harmony with the intended spirit and purpose of the ordinance."  Code § 15.2-2309(2). Factors such as those advanced in support of the variances in these cases are appropriate for consideration by the BZA in a case that falls within that discretionary power, but they are immaterial in a case in which the BZA has no authority to act. The threshold question for the BZA in considering an application for a variance as well as for a court reviewing its decision, is whether the effect of the zoning ordinance upon the property under consideration, as it stands, interferes with "all reasonable beneficial uses of the property, taken as a whole."  If the answer is in the negative, the BZA has no authority to go further.

For these reasons, we will reverse the judgments of the circuit courts in each of the cases, vacate the resolutions of the Boards of Zoning Appeals of the County of Fairfax and the Town of Pulaski, respectively, reinstate the resolution of the Board of Zoning Appeals of the City of Virginia Beach, and enter final judgments here.

Record No. 030982 — <u>Reversed and final judgment</u>.
Record No. 031770 — <u>Reversed and final judgment</u>.
Record No. 031771 — <u>Reversed and final judgment</u>.